FOOT, SCHULZE & COMPANY v. ROBERT R. PORTER AND OTHERS.[1]

November 26, 1915.

Nos. 19,502—(123).

**Partnership — existence of relation — evidence.**

> Plaintiff garnisheed a fund realized from a sale of a mercantile business, claiming such business to be that of defendants, father and son, as partners, and that plaintiff was a creditor of the partnership. The intervener claimed the fund as trustee in bankruptcy of one of the defendants as sole trader under the name of R. R. Porter & Son. In a jury trial, by consent, the single question whether a partnership

[1] Reported in 154 N. W. 1078.

agreement existed between defendants was submitted. The verdict was that it did exist. There was no adjudication of bankruptcy of the partnership. *Held*:

(1) The evidence made it a question of fact whether a partnership contract existed between defendants.

(2) The court's instruction, that the admissions by defendants of an actual partnership and their conduct towards each other as partners with reference to the business tend to prove a contract of partnership express or implied, was correct. And it was not error to refuse to instruct with reference to ostensible partners, since that issue was not submitted to the jury.

(3) A self-serving declaration made by one of defendants in a disclaimer filed in the bankruptcy proceeding long after the date of the adjudication of bankruptcy was properly excluded.

(4) The intervener did not show title to the fund garnisheed, since the fund was obtained from the assets of the partnership which had not been adjudicated a bankrupt.

Action in the district court for Ramsey county. John P. Galbraith and John P. Galbraith, as trustee, were garnisheed. O. G. Kinney, as trustee in bankruptcy of Robert R. Porter, bankrupt, intervened. The facts are stated in the opinion. The case was tried before Dickson, J., and a jury which returned a verdict that there was a partnership agreement existing between Robert R. Porter and George H. Porter. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, intervener appealed. Affirmed.

*Morphy, Bradford & Cummins* and *Richmond, Jackman & Swansen,* for appellant.

*Boyesen & Flor* and *Sylvan E. Hess,* for respondent.

HOLT, J.

The garnishee having disclosed his possession of a fund realized from property which had been turned over to him by the defendants, and that this fund was claimed by O. G. Kinney, the trustee in bankruptcy of one of the defendants, the court directed such trustee to intervene and assert his claim, or be barred. Thereupon Kinney served a complaint in intervention, which plaintiff answered. The issues material to a disposition of the appeal presented by the pleadings may thus be briefly stated:

The intervener alleged that the defendant Robert R. Porter prior to June 10, 1914, as sole trader, had been engaged in the general merchandise business at Wheeler, Wisconsin, under the name of R. R. Porter & Son; that the property turned over to the garnishee on April 28, 1914, and converted into the fund garnisheed, belonged to the defendant Robert R. Porter individually; that on June 10, 1914, Robert R. Porter filed, in the district court of the United States of the proper district, a voluntary petition in bankruptcy, and said Porter, trading as R. R. Porter & Son, was duly adjudged a bankrupt, and the intervener duly appointed and is acting as trustee; that after that time a document, dated June 8, 1913, signed by defendant George H. Porter, a minor 20 years old, was filed in the bankruptcy proceeding wherein he acknowledged that he was the oldest son of Robert R. Porter; that he was not to acquire any interest in the individual mercantile business owned and carried on by his father at Wheeler; that his connection therein was merely assisting his father, and that he, George, disclaimed any interest in the assets of R. R. Porter & Son, and conceded to his father the right to dispose of such assets. Plaintiff alleged that R. R. Porter & Son was a partnership composed of defendants Robert R. Porter and George H. Porter; that such copartnership conducted the mercantile business referred to; that the fund in the hands of the garnishee was realized from the partnership assets long prior to June 10, 1914, and that plaintiff and its assignors dealt with the partnership relying upon the representation by the partners that they were such, and on the strength thereof defendants obtained the merchandise for the purchase price of which this action is brought. Although it appears that both plaintiff and intervener moved for a directed verdict when the evidence was in, the jury were not to render a general verdict for or against either party, but were merely to give a special verdict to be used by the court in the determination of the controversy. The only verdict rendered was this: "We, the jury in the above entitled action, find a verdict that there was a partnership agreement existing between Robert R. Porter and George H. Porter." Notwithstanding that the case has never been tried to a conclusion, either by court or jury, the intervener made the usual motion in the alternative for judgment or a new trial. From the order denying the motion the intervener appeals.

The practice of appealing before there is either a verdict or decision upon which a judgment may. be entered is questionable, unless the verdict is upon an issue which is clearly decisive of the case, as in Buck v. Buck, 122 Minn. 463, 142 N. W. 729. However, no objection is made to a consideration of the merits of the appeal, and we proceed to determine the questions which, in our opinion, are open to review upon the record.

The first is: Is there evidence to sustain the special verdict? The second: If so, did the court err in the submission of the special issue, either in rulings on evidence or in the charge? The third: Was the intervener entitled to a directed general verdict?

There was testimony of verbal admissions by defendants that they were partners. The stationery used in the business gave the name of George H. Porter as a partner. In written statements to the two leading commercial agencies, Bradstreet and Dun, the defendants gave their individual names as composing the partnership of R. R. Porter & Son. It is true that both, upon the witness stand, while admitting the use of stationery and the making of the written statements by them, deny that there ever existed any agreement to become partners, and positively deny that George H. Porter had any interest whatever in the business. However, the whole conduct of the business was left to George H. Porter. The father was postmaster at Wheeler and had no time to give to the mercantile business of R. R. Porter & Son. The son not only ran the business as if it were his own, but used whatever funds thereof he saw fit for his private purposes. We take it that. here were prior admissions, statements and conduct on the part of both father and son so at variance with their testimony on the witness stand that the jury were fully justified in finding the testimony false, and in predicating the existence of a partnership contract upon what defendants had said and done out of court. It was not necessary to prove the contract in detail.

In the charge the court, after defining what constitutes a partnership and stating that the agreement to form a partnership may be either written or verbal, proceeded: "And, then, even if there is no express or definite agreement, either in writing or verbally, there still may be a contract of partnership created by implication, or raised by implication of law from the acts and conduct of parties with each other in

reference to property and business enterprises." We think this is good law, especially when considered in connection with this instruction, found in the charge: "A contract may be implied by law from the intention which is manifested by persons in their conduct with each other in relation to property that is involved in a business. This implication arises only from such conduct as these people have manifested towards each other." If two persons combine their capital and labor in a mercantile business, the one furnishing the capital and the other the labor, and both in writing state that they are partners, and conduct themselves as such with reference to the business, although nothing be said as to the division of profits or sharing of losses, we apprehend no difficulty to be in the way of finding the existence of a partnership contract, or of properly adjusting the rights of the partners. Nor do we think the court erred when, after reciting intervener's evidence to disprove the existence of a partnership in fact, in referring to plaintiff's evidence of certain letterheads, checks and correspondence, he thus continued: "And it is undisputed that the son, George H. Porter, had the principal management of the business; that he did the buying; that he superintended the conduct of the business and attended to the financial end of it, and for the short period during which it run he was apparently the general manager of the business; and they have brought forward and put in evidence these facts, and it is evidence which tends to show that there was some sort of a partnership agreement between the parties, if you believe it, and it appeals to you as credible, and so I say, the dispute in this case is as to whether or not there was any partnership agreement, the burden of proof being upon the plaintiff to show it by a fair preponderance of the evidence." Surely the recited evidence tended to prove a partnership in fact, and that is all the court said. Boosalis v. Stevenson, 62 Minn. 193, 64 N. W. 380; Rosenbaum v. Howard, 69 Minn. 41, 71 N. W. 823; McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760. One requested instruction which was not given related to definition of an ostensible partner, the estoppel thereby created in favor of creditors dealing with an ostensible partnership, and that this estoppel does not work against a minor. The instruction was not applicable to the special issue submitted to the jury. The court clearly explained that whether there was an ostensible partnership as to creditors,

was, by agreement of counsel, reserved as a question for the court, and that the jury were confined to the one issue of the existence or non-existence of a partnership in fact.

The disclaimer, hereinbefore referred to, signed by George H. Porter, was offered in evidence and excluded. So were the schedules in the bankruptcy matter. Neither appear to have any particular bearing upon the jury question. In view of the course the trial took, it is doubtful whether we can consider rulings excluding evidence which relates to the issues reserved for the court and still undetermined. Apart from that, the disclaimer was self serving and no evidence was offered that it was delivered to any one until filed in the bankruptcy proceeding long after the date as of which Robert R. Porter was adjudged a bankrupt.

It remains to consider whether, upon the evidence received, the intervener was entitled to a general verdict. Each party made a motion for a directed general verdict. Since there was, according to our view, sufficient evidence to warrant a finding that the business of R. R. Porter & Son was that of a firm composed of defendants as partners in fact, the trial court, for the purpose of the motion, had to assume that the special verdict might so determine. Then the legal proposition is, did the intervener prove title to this partnership fund. If he has failed to prove title to this fund, derived from the partnership assets, he cannot recover, and it becomes entirely immaterial how the possession of the fund came into the hands of the garnishee. However, it does appear that, in April, 1914, the defendants had, by a trust assignment, transferred the assets of the firm to the garnishee, for the benefit of the partnership creditors, and, pursuant to that assignment, the garnishee took possession and disposed of the same, thus realizing the fund garnisheed. And we apprehend no one can claim this fund as against the garnishee except firm creditors or some one representing them. The intervener confessedly does not represent the partnership. As trustee in bankruptcy of an individual partner he acquired no right to the possession of the partnership property. Of course, we speak of an actual, not of an ostensible partnership. Neither did the adjudication of one of the partners a bankrupt set aside or vacate preferences made by the firm. It has been held that, when one of two members composing a partnership and the partnership have been adjudged bankrupt, the

court may draw to itself and administer the property of the other member of the firm to the extent necessary to pay the partnership debts. Francis v. McNeal, 228 U. S. 695, 33 Sup. Ct. 701, 57 L. ed. 1029; Armstrong v. Fisher, 224 Fed. 97. But these decisions clearly indicate that the converse does not hold true, viz., that, where a member of a partnership has been adjudicated a bankrupt and a trustee is appointed, such trustee thereby acquires, or may acquire, the right to the partnership assets. He cannot recover an unlawful preference made by the firm. American Steel & Wire Co. v. Coover, 27 Okl. 131, 111 Pac. 217, 30 L.R.A. (N.S.) 787; Rubenstein v. Lottow, 220 Mass. 156, 107 N. E. 718; In re Mercur, 122 Fed. 384, 58 C.C.A. 472, affirming 116 Fed. 655. Although one of the two partners was a minor and could not be adjudicated a bankrupt, it admits of no doubt that the partnership might and should have been so adjudicated in order to entitle the intervener to the firm assets. In re Duguid, 100 Fed. 274, and in re Dunnigan, 95 Fed. 428, this was done. In re Coe, 157 Fed. 308, cited by intervener, is not in point. There the two surviving partners continued the business under the old firm name. This was authorized by the partnership contract. The court says: "There is no evidence that any new firm was formed by Knox and Coe after the death of Stanley; and if there is any presumption to be indulged, it seems to me that the presumption is that the business which was continued after the death of Stanley, in the name of Cadenas & Coe, was the business of Knox and Coe as surviving partners of the old firm, continued pursuant to the provisions of the articles of copartnership permitting it." Here there has been no adjudication of bankruptcy of the copartnership composed of the defendants, and the intervener has no title to the partnership assets as against the firm creditors. Plaintiff was a creditor of the defendants as copartners.

In our opinion the special verdict took the question of ostensible partners out of the case. And the disclaimer of George H. Porter of interest in the assets or firm, even had proper foundation for its reception been laid, is of no effect. That an infant's partnership contract is voidable is true enough. But this ability to avoid contracts does not deprive firm creditors of their rights to resort to the partnership assets. Jennings v. Stannus & Son, 191 Fed. 347, 112 C.C.A. 91.

Our conclusion is that no error inheres in the special verdict and that the intervener was not entitled to a directed general verdict in his favor.

Order affirmed.