CONSTANTINE KAVALARIS AND ANOTHER v.
THOMAS CORDALIS AND OTHERS.
PAUL ORFAN, APPELLANT.[1]

March 29, 1945.

No. 33,888.

[1]Reported in 18 N. W. (2d) 137.

*Jay W. Smith,* for appellant.

*A. E. Bryngelson* and *M. E. Culhane,* for plaintiff-respondents.

MAGNEY, JUSTICE.

Paul Orfan, one of the defendants, appeals from an order denying his motion for amended findings or a new trial.

Plaintiffs, husband and wife, are the owners of a building in the city of Minneapolis in which a restaurant known as the College Inn Cafe has been operated for a number of years. On July 31, 1936, under a written instrument, the premises were leased to defendants James G. Likas and Blanche L. Likas for a term of six years from August 1, 1936. On the same day, plaintiffs sold to the Likases, under conditional sales contract, certain personal property located in the leased premises which was suitable for and used in the operation of a restaurant business. The conditional sales contract required a down payment of $1,500 cash and the balance in monthly installments. Lessees went into possession at once. The premises were vacated on August 23, 1941. Plaintiffs were unsuccessful in rerenting, except for short periods, and on August 1, 1942, there was due under the lease the sum of $2,837.50, with interest. This amount includes certain sums due prior to the vacation of the premises. Plaintiffs brought action against the Likases, signatories to the lease, Thomas Cordalis, and Paul Orfan to recover the amount of the unpaid rent. Plaintiffs claimed that Cordalis and Orfan were undisclosed partners of the Likases at the time the lease was entered into. The court found that Orfan was such an undisclosed partner and allowed recovery against him, and, further, that Cordalis was not a partner. It also found that Blanche Likas was an agent of Orfan and not a partner. Whether or not the court was justified in excusing Cordalis from the obligations of the lease is not involved here. The first and most important question is whether the evidence sustains the findings that

444

Orfan at the time of signing of the lease was a partner of James G. Likas.

Prior to August 1, 1936, Orfan had negotiations with Kavalaris relative to purchasing the restaurant equipment and leasing the College Inn premises. Kavalaris asked $8,000 for the equipment and $200 per month in rent. Orfan refused to buy or lease at those figures. Later on, Likas went to see Kavalaris about buying the equipment and renting the premises. While he was negotiating, he discovered that Orfan had been to see Kavalaris about the same matter. So he went to see Orfan and asked him to become a partner. He claims Orfan refused to go in with him at that time. On July 31, 1936, Likas and his wife signed the lease with Kavalaris and also the conditional sales contract. On that same day, Likas and Orfan each deposited $1,200 in the Fifth Northwestern National Bank of Minneapolis. On that day also, an application for a checking account in the name of the College Inn Cafe was signed by "Paul Orfan." In the application it was stated that the College Inn Cafe was a general partnership and that James G. Likas and Paul Orfan were the partners. Martin McDonough, the cashier of the bank, filled in the application and elicited the information found therein from Orfan and Likas. In the lower right-hand corner, under the heading "Information for Credit Dept.," McDonough made the following notation:

"Mr. Orfan & Likas are today purchasing the College Inn Cafe operated at the above address. Mr. Likas formerly worked at the Granada Cafe. Mr. Orfan was formerly a partner in the Carling Hotel and White Way Cafe."

On the same day, Likas and Orfan also signed the signature card. McDonough initialed the card. At the top is printed "Partnership Account," and under "Name of Account" is typewritten "College Inn Cafe." The signatures of Likas and Orfan are found underneath the following printed statement:

"Depositor's Authorized Signature and Signatures of ALL Partners; Number of Signatures required 2."

On August 4, 1936, Likas and Orfan signed applications for electric service effective as of August 1, 1936. On August 3, Orfan signed an application for a beer license, inserting in the blank space opposite "Proprietor's name": "Paul Orfan and James G. Likas." The application also stated that Constantine Kavalaris had a conditional sales contract on the equipment, on which there was still $5,000 to be paid. The bank ledger sheets covering the opening of the College Inn checking account show that the account was opened on July 31, 1936, by a deposit of $2,400, and that on that date the bank paid a certified check signed by Likas only, drawn on that account, for $1,500, which was the check paid to Kavalaris on the conditional sales contract, thus leaving a balance of $900 in the bank. Under date of August 6, 1936, the bank paid a check dated August 1 for $175 drawn on the account. This check was payable to Kavalaris for the first month's rent under the lease. The opening page of the journal of the College Inn Cafe shows that the business started out with a $2,400 deposit in the bank made by Orfan and Likas on July 31, 1936. Orfan's ledger account shows his capital investment of $1,200, entered under date of August 1, 1936, and his withdrawals. On that date, Orfan, Likas, and Cordalis gave a printer orders for the printing of the menu. In all these preliminaries to the opening up and the operation of the cafe, no mention is made of Blanche Likas as a partner in the business. Her name appears only in the conditional sales contract and the lease.

Orfan sold his interest in the cafe to Likas on November 5, 1936. Likas claims to have operated it as an individual from that day until December 1936, when the Likases and Thomas Cordalis organized a corporation. Likas claims that the corporation operated the cafe until May 16, 1940, when the corporation and the Likases gave Cordalis a chattel mortgage on the fixtures and equipment. Likas claims to have operated the cafe from then on until the foreclosure of the chattel mortgage. Thereafter the cafe was operated for a short time by Cordalis until it was closed August 23, 1941.

Orfan admits that he was a partner on August 3, 1936. In his answer, he alleged that he did not become such until September 28. Inferentially, he now admits that he became a partner as early as the day the lease was signed, but after its execution—that the obtaining of the lease was a condition precedent to his becoming a partner.

The evidence as we have detailed it supports the findings of the trial court that Likas and Orfan became partners on July 31, 1936, for the purpose of operating the College Inn Cafe, and that on that day James G. Likas, as an undisclosed partner of Paul Orfan, and Blanche Likas entered into the lease with Kavalaris. The court also found that Blanche Likas was an undisclosed agent of James G. Likas and Paul Orfan when she signed the lease. Be that as it may, if Orfan was a partner of Likas when the lease was entered into for the benefit of the partnership, the action of Likas binds Orfan.

Minn. St. 1941, § 323.08 (Mason St. 1927, § 7392), provides:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority."

Section 323.07 (§ 7391) defines partnership property as follows:

"Unless the contrary intention appears, property acquired with partnership funds is partnership property."

Here, the initial payment of $1,500 on the property covered by the conditional sales contract, as well as the $175 which took care of the first month's rent, was paid out of funds on deposit in the partnership bank account. There was no showing of a contrary intention. This property, therefore, became partnership property. If Orfan was a partner at the time the lease was signed, the fact

that he was an undisclosed partner does not relieve him of liability. If Likas and Orfan were partners between themselves, they were partners as to plaintiffs. In the early case of Wood v. Cullen, 13 Minn. 365, at p. 369 (394, at p. 398), this court said:

"It was further argued that if Cullen, the appellant, did not sign the articles of association before mentioned, he could not be held jointly with the persons who did sign them. If, however, as is claimed by the respondent, the evidence in the case tended to show that Cullen was a dormant partner in the company, and ratified and approved of the agreement made by Fish with the plaintiff, the rule contended for would be incorrect. 'If one is chargeable as partner because so held out, he may be treated as one not only by being made responsible, but by being joined with the partners in a suit against them.' Parsons, Part. 134, and cases cited in notes. A fortiori the same rule must prevail where the person sought to be charged is not treated as a partner, simply because so held out, but because he is actually a partner, though dormant."

In Moore v. Thorpe, 133 Minn. 244, 250, 158 N. W. 235, 238, this court said:

"That plaintiff made his contract with Kellett Company individually does not necessarily exonerate the other parties. The complaint does not show that plaintiff knew of the partnership, and therefore knowingly and voluntarily elected to give credit to one only. Unless plaintiff knew that the individual defendants were principals in the enterprise, and intended notwithstanding to give exclusive credit to Kellett Company, he may recover of the after-disclosed partner, * * *."

In Bowman & Steadman v. Farmers State Bank, 168 Minn. 221, 209 N. W. 863, the court held that where a contract is made by a partner in his name only, but in fact for the firm and for its benefit, and it actually receives the benefit, the other contracting party, upon subsequently discovering the real party, to wit, the copartnership, may abandon his right to look to the partner personally and may resort to the copartnership. This is upon the theory

that every partner is the agent of the copartnership for the purposes of its business.

■ Orfan claims that the plaintiffs have by their conduct elected not to hold him after knowledge of the facts. Orfan gave testimony as to certain conversations between him and Kavalaris in which Kavalaris disclosed that he knew that Orfan and Likas were copartners. These conversations were denied by Kavalaris. There is nothing in the evidence to indicate that at the time the lease was executed Kavalaris knew that there was a partnership arrangement between Likas and Orfan, or that at any time he knew the details of that arrangement. There is no evidence that Orfan has changed his position or that he has been prejudiced because of anything done by plaintiffs. In Froslee v. Sonju, 209 Minn. 522, 526, 297 N. W. 1, 4, this court stated:

"There can be no estoppel unless the party sought to be estopped had full knowledge of the facts at the time of the representation, concealment, or other conduct claimed to give rise to an estoppel, or was guilty of culpable negligence in not knowing them. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3193; Humphrey v. Polski, 161 Minn. 61, 200 N. W. 812; Schaefer v. Nylin, 162 Minn. 170, 202 N. W. 439. No estoppel arises where the conduct of the party sought to be estopped is due to ignorance founded upon an innocent mistake. Schaefer v. Nylin, *supra*."

In the Schaefer case, this court said (162 Minn. 172, 202 N. W. 439):

"* * * But, whether the conduct of plaintiff's grantor may be said to be negligence, we need not consider for the very simple reason that before defendant can successfully invoke estoppel by conduct he must show that he 'has been led thereby to change his position for the worse.' * * * In this case the defendant has made no effort to show that he has been prejudiced or that he has in any way changed his position for the worse because of the facts involved."

That is the situation in the instant case. It is unnecessary to de-

tail the evidence upon which Orfan bases his claim of estoppel. It is insufficient to sustain his claim.

In disposing of this case on its facts, we are not overlooking the statement and argument of counsel for respondents that the assignments of error are not sufficient under the rules of this court. They do not comply.

Order affirmed.

