# EDNA CYRUS v. CURTIS W. CYRUS.[1]

May 14, 1954.

No. 36,220.

[1]Reported in 64 N. W. (2d) 538.

*Olson & Powell* and *Alfred C. Schmidt,* for appellant.
*Wheelock B. Sherwood,* for respondent.

MATSON, JUSTICE.

Defendant appeals from a judgment for the plaintiff.

Plaintiff, as administratrix of the estate of her deceased husband, Cecil Cyrus, brought this action to establish the existence of a partnership from November 1, 1936, to December 17, 1944 (date of decedent's death) between her husband and his brother, Curtis, the defendant herein, and to provide for a liquidation of said partnership and a division of its assets.

It is neither the right nor the duty of this court to set aside the findings of the trial court upon conflicting evidence, even though this court might have come to a different conclusion had it tried the case *de novo,* if such findings are reasonably sustained by taking the evidence as a whole in the light most favorable to such findings. The circumstance that litigants flatly contradict each other in their testimony is by itself of no significance upon appeal because issues as to the credibility of opposing witnesses are to be resolved by the trier of fact. These elementary principles are frequently repeated by this court because they are decisive of so many cases upon appeal.

Taking the evidence in the light most favorable to the findings we find these controlling facts:

In 1934, Cecil Cyrus, Edna Cyrus (the plaintiff), and their children were living on a farm in North Dakota. In 1935 Cecil Cyrus served time in the penitentiary at Burleigh, North Dakota, and the plaintiff and children lived in Minot. During the years 1934 and 1935, both Cecil and the plaintiff received letters from Curtis, Cecil's brother, in which Curtis urged them to move to Minnesota and enter into a "partnership" for the building and operating of a tourist camp or resort on Lake of the Woods. In response to the requests of Curtis, the family moved to Minnesota in December of 1936 and entered into an agreement with a third person to live in a house

situated on property close to the 60-acre tract which Curtis had purchased in his own name in 1935. Curtis's property was vacant except for one old "shack," and in accordance with the agreement to start a resort, Cecil and his father built a cabin on Curtis's land. Although there is evidence to the contrary, the trial court could reasonably find that this cabin, and all subsequent improvements, were thereafter paid for out of earnings derived from the operation of the resort. Curtis personally paid the taxes and paid for boats purchased, but it is plaintiff's testimony that for these and other expenditures made Curtis was reimbursed out of resort earnings. Sometime after 1936 an additional 40-acre tract was acquired in Curtis's name, but there is credible testimony that it also was paid for out of resort earnings. Although out of the resort earnings Cecil was allowed the living expenses for his family, he contributed his labor, and his wife did all the washing and ironing and cleaned and took care of the cabins. In addition Cecil's three children, especially the older one who was 18 years old when Cecil died, helped with the resort work.

During the entire period involved herein Curtis was regularly employed in Minneapolis and did not contribute any personal work to the operation of the resort other than to build an occasional cabin shelf while on his vacation. Every fall when Curtis visited the resort, the earnings were accounted for and Curtis was given his one-half share. This continued until Cecil died in December of 1944. At that time the value of the resort was estimated to be $10,000.

Before Cecil's death, Curtis had sent a copy of his will and a letter to Cecil in which he explained that he was protecting Cecil by his will until he could deed one-half of the property to him. After Cecil's funeral he told the plaintiff that he would deed half the place to her. Later Curtis sent two letters to the plaintiff in which he offered to deed one-half of the resort to her, and in one of these letters he remarked that "It's yours as much as mine and I'll make the deed over that way when I have the opportunity." From 1945

to the present, Curtis himself, or others renting from him, have operated the resort.

Plaintiff, as special administratrix of Cecil's estate, brought her action in November 1951 for an adjudication that a partnership existed and for the liquidation of such partnership and a division of its assets. Judgment was entered in favor of the plaintiff declaring that a partnership had been formed and that the same was dissolved when Cecil died on December 17, 1944, and that Cecil's interest therein was then of the value of $5,000. The judgment further provided for the appointment of a liquidating receiver to liquidate the partnership and to pay to plaintiff as an ordinary creditor the sum of $5,000 with interest thereon from December 17, 1944. Defendant's appeal is from said judgment.

■ We are concerned with the specific issue of whether Cecil and Curtis were partners as between themselves and not whether they were partners as to third persons.[2] Except in those rare cases where the evidence is conclusive, partnership or no partnership is a question of fact.[3] Since there is no arbitrary test for determining the existence of a partnership, each case must be decided according to its own peculiar facts; and upon appeal this court will not disturb the findings of the trier of fact unless the evidence is conclusive.[4] It is simply a question of whether the evidence as a whole sustains the findings.[5]

---

[2]Confusion in the interpretation and application of decisions results when the tests or indicia of a partnership relation are applied indiscriminately without keeping in mind the specific purpose for which the partnership issue is to be determined. A certain indicium of partnership may be of considerable significance in one case, and not in another. See, 40 Am. Jur., Partnership, § 32; Annotation, 137 A. L. R. 167.

[3]Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681; Randall Co. v. Briggs, 189 Minn. 175, 248 N. W. 752; 5 Dunnell, Dig. & Supp. § 7349b.

[4]Blumberg v. Palm, 238 Minn. 249, 56 N. W. (2d) 412; Hamilton v. Boyce, 234 Minn. 290, 48 N. W. (2d) 172; Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Meagher v. Fogarty, 129 Minn. 417, 152 N. W. 833; McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760.

[5]Blumberg v. Palm, *supra.*

■  We have repeatedly held that a trial court's finding that a partnership exists must be sustained if the evidence as a whole reasonably shows that the parties have entered into a contractual relation whereby they have combined their property, labor, and skill in an enterprise or business as co-owners for the purpose of joint profit.[6] Our decisions are in accord with the uniform partnership act which defines a partnership as an association of two or more persons to carry on as co-owners a business for profit. M. S. A. 323.02, subd. 8.

■  In the light of these principles we cannot do otherwise than hold that the evidence sustains the trial court's finding of a partnership. In 1934 and 1935 defendant wrote letters urging decedent and plaintiff to move to Minnesota for the purpose of entering into a "50-50 partnership" in the building and operation of a resort. These letters, although not constituting an admission of the present existence of a partnership,[7] were competent as evidence of defendant's actual intent immediately preceding the arrangement made between the parties.[8] A party's declaration of intent preceding—when not too remote—or accompanying his act of entering into a contractual relationship with another characterizes the nature of the act and is a material evidentiary element in determining whether a partnership has resulted.[9]

Furthermore, the copy of the will and the accompanying letter which the defendant sent to Cecil before the latter died indicated that the parties actually regarded the arrangement between them as an enterprise operated by them as co-owners for the purpose of joint profit. The will purported to bequeath one-half of the entire resort business to Cecil, and the letter stated that he had made this will to protect Cecil in case anything happened to him before he could convey one-half of the property to him. Likewise, tending to

[6]Blumberg v. Palm, *supra;* Hamilton v. Boyce, *supra;* McDonald v. Campbell, *supra.*

[7]See, Boosalis v. Stevenson, 62 Minn. 193, 64 N. W. 380.

[8]See, Randall Co. v. Briggs, 189 Minn. 175, 248 N. W. 752; McDonald v. Campbell, 96 Minn. 87, 104 N. W. 760.

[9]See, 7 Dunnell, Dig. (3 ed.) § 3293.

corroborate the existence of a partnership, we have defendant's two letters written to plaintiff after Cecil's death in which defendant declared that the resort was as much hers as his and that he would give her a deed as soon as he had the opportunity.

The evidence as a whole in other respects reasonably tends to indicate an intent of the parties to combine their property, labor, and skill as co-owners of a business for joint profit. There is credible evidence that the resort equipment and improvements were paid for out of the resort earnings. Significantly there was a splitting of the profits each fall. See, M. S. A. 323.06 (4). In addition Cecil was never paid a fixed wage or salary. Although he had no fixed salary, he did receive out of the resort's income the living expenses for himself and his family. As an offset to the receipt of such expenses, the trial court no doubt took into consideration the fact that Cecil contributed not only his own personal services but also those of his wife—plaintiff herein—as well as certain work performed by his children. Although Cecil may have contributed nothing but his services to the resort business, this does not preclude the existence of a partnership.[10] It is not unusual for two or more persons to unite in business, one contributing money and the other labor, the profits being divided between them; and in such cases it is often held that a partnership is formed. 40 Am. Jur., Partnership, § 45. Although not of controlling significance,[11] the fact that Cecil handled the money taken in and managed the resort is indicative of something more than an employer-employee relationship; and it is generally recognized that such fact tends to show a partership.[12] Furthermore, it is evident that there was a community of interest between Cecil and Curtis in the development of the resort, and this circumstance is an additional indicium of a partnership.[13] It is

[10]Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Foot, Schulze & Co. v. Porter, 131 Minn. 224, 154 N. W. 1078; Annotation, 137 A. L. R. 17; 40 Am. Jur., Partnership, § 45.

[11]See, McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583.

[12]See, 40 Am. Jur., Partnership, § 51; Annotation, 137 A. L. R. 64.

[13]Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; 40 Am. Jur., Partnership, § 41.

unnecessary to review the evidence in further detail. Separately, the evidentiary items are of no controlling significance; nevertheless, when combined together they present an evidentiary pattern which, in light of the evidence as a whole, presented an issue of fact for the trial court. The trial court's finding that a partnership existed must be affirmed.

■ It is particularly urged, however, that the real estate in defendant's name which was used in the operation of the resort never became a part of the partnership assets. A 60-acre tract was purchased by the defendant in 1935 before the partnership existed. After the partnership was formed an additional tract of 40 acres was bought. Both tracts were used solely for partnership purposes.

The trial court was justified in finding that the 40-acre tract was partnership property. The evidence supports a finding that it was purchased with earnings from the resort, a fact which in the absence of other circumstances denotes that the property belonged to the partnership. Kavalaris v. Cordalis, 219 Minn. 442, 18 N. W. (2d) 137. M. S. A. 323.07 defines partnership property as follows:

"Unless the contrary intention appears, property acquired with partnership funds is partnership property."

Section 323.08 provides that every partner is an agent of the partnership for the purpose of its business. The mere fact that the title was taken in defendant's name does not prevent it from being partnership property. It is elementary that, where one partner purchases real estate with partnership funds and takes the title in his own name, he will be deemed a trustee holding such title for the benefit of the partnership.[14] We have the further factor that Curtis was reimbursed out of resort earnings for taxes paid on the realty. The trial court could reasonably find not only that there was an absence of any intent that the tract should belong to Curtis but that there was an actual intent that it should belong to the partnership.

[14]Hardin v. Jamison, 60 Minn. 348, 62 N. W. 394; Stitt v. Rat Portage Lbr. Co. 98 Minn. 52, 107 N. W. 824; see, Kavalaris v. Cordalis, *supra;* Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570.

■ It is uncontradicted that the original 60-acre tract was purchased by the defendant with his own money and that the title was taken in his own name. As already noted it was acquired prior to the creation of the partnership. If the 60-acre tract constitutes partnership property, it must be on the theory that it was contributed to the partnership by the defendant. Whether real property acquired by a partner individually prior to the formation of a partnership belongs to or has been appropriated to the partnership is a question of intent. The fact that such realty is used for partnership purposes is not of itself, when standing alone, sufficient to establish an intent to contribute it to the partnership assets. 40 Am. Jur., Partnership, §§ 100 and 105. In addition to the element of partnership use, we have, however, certain other evidentiary factors. Cabins, docks, and other improvements were built upon this land for the use of the partnership and were paid for out of partnership earnings. Improvements so made at partnership expense, although not of controlling significance, tend to show an intent that the land should be partnership property.[15] As with the 40-acre tract, we have the salient fact that the evidence sustains a finding that the taxes were ultimately paid for out of partnership earnings. In the light of these factors, the court could reasonably attach considerable significance to the statements which defendant made to plaintiff by letter and otherwise after Cecil died. These statements clearly recognized plaintiff's legal right to one-half of the property, a right which could exist only if the parties believed the property belonged to the partnership. Under the circumstances we can only conclude that the evidence sustains the trial court's conclusion that the entire realty was partnership property.

The decision of the trial court is affirmed.

Affirmed.

[15]Klingstein v. Rockingham Nat. Bank, 165 Va. 275, 182 S. E. 115; Booher v. Perrill, 140 Ind. 529, 40 N. E. 36; 40 Am. Jur., Partnership, § 106; Annotations, 37 L.R.A.(N.S.) 904 and 27 L. R. A. 484.