[No. 2005-3.   Division Three.   February 8, 1978.]

*In the Matter of the Estate of*
EUGENE EMMITT KRUSE.

*Duane S. Radliff,* for appellant.

*John Moberg, Edna N. Verzani,* and *Payne & Verzani,* for respondent.

McINTURFF, J.—Both parties appeal from judgments in an action for accounting following the death of one member of a partnership. The surviving partner, Donald Kruse, obtained judgment for $59,737.80; the estate of the deceased partner, his brother Eugene Kruse, received $76,064.20.

Typically, there was no written agreement between the brothers, but neither party disputes the existence of the partnership. The principal issues surround the ownership of one of four parcels of Grant County land farmed by the brothers and the rights and liabilities of the surviving partner following the death of his brother.

### OWNERSHIP OF THE LAND

The court found the partnership was formed sometime in July 1971 and prior to that time decedent and his wife acquired the disputed parcel as their community property. While it was pledged as security for a partnership debt, the court nonetheless considered the land a community asset of decedent and his wife. The court found three other contiguous parcels were acquired by the partnership and became partnership assets as did various personal property.

The surviving partner attacks the findings and conclusions regarding the time of partnership formation and the award to the estate of the disputed parcel of land. He first argues it should be considered a partnership asset because the partnership existed prior to its purchase and payments made by the partnership indicate its partnership nature under RCW 25.04.070.

While there is evidence that the surviving partner may have contributed $700 to the purchase price of the parcel and that the partnership paid additional sums after the property was pledged as security for a partnership mortgage, the judge apparently believed the testimony of the real estate agent who handled the sale of the parcel. The agent said the land was purchased by decedent as early as 1969 through a series of real estate contracts and that he did not clearly recall the payments of either the surviving partner or the partnership. When asked by the judge why he concluded the parcel belonged to decedent, the agent answered:

> I would have to go in to a rather lengthy discussion of that first sale, the Lee transaction, and the sellers' problems. But that was my testimony and that is my considered opinion. The checks [from the survivor and partnership] notwithstanding. I maintain that those checks were issued on behalf of Eugene Kruse through Don Kruse as an intermediary. Gene handled his money that way, he handled a lot of cash in brown paper bags.

Nonetheless, citing a variety of cases from other jurisdictions,[1] the survivor next argues that even if the property was purchased by decedent, it may still be deemed to have become an asset of the partnership through the intention of the parties as manifested by their acts and conduct toward the land. We find no Washington cases on point. However, factors which have been considered in determining the question include (1) the use of property in

---

[1]The surviving partner relies generally on the cases collected in Annot., *Partner's Realty as Asset of Firm*, 45 A.L.R.2d 1009 (1956). *See, e.g., Cyrus v. Cyrus*, 242 Minn. 180, 64 N.W.2d 538, 45 A.L.R.2d 1002 (1954); *Kelso v. Coburn*, 334 Mich. 43, 53 N.W.2d 686 (1952); *McNab v. Mills*, 199 Cal. 231, 248 P. 657 (1926).

the partnership business, (2) improvements on the property made with partnership funds, (3) treatment of the property as a partnership asset in the firm's accounts, (4) payments of claims against the property by the partnership, (5) conveying or mortgaging it as a partnership asset, and (6) receipt of income from the property as partnership income.[2]

Here the only work performed on the parcel from the inception of the partnership in 1971 until the death of decedent was clearing sagebrush, placing surveying stakes, installing an irrigation system, and seeding one–half of the parcel with cover crop. After the death of Eugene Kruse, one–half of the parcel was watered, seeding was done and the parcel was disced and watered. There is no indication of partnership income from the parcel prior to the death of decedent. While there is a partnership check to the county treasurer to pay for water and taxes for presumably all four partnership parcels, the surviving partner's accountant was not certain the payment covered both charges for all the parcels. Partnership improvements on the property were relatively minor; there was no income from it prior to decedent's death; there was no clear indication as to the amount, if any, of partnership funds expended to pay claims against it; and there was no real accounting which would indicate the property's status in the partnership. Thus, under all the facts and circumstances, and in consideration of the prior enumerated factors, there is substantial evidence to support the finding that the parcel remained the community property of decedent and his wife.

### Rights and Liabilities of Surviving Partner

The survivor next asks that his judgment be enhanced by his share of partnership funds expended upon that parcel. While there is evidence the partnership may have spent about $40,000 on the combined properties, the surviving partner admits there is no indication as to which of the four

---

[2]See annotation, cases cited in footnote 1.

parcels were benefited. Therefore, any pro rata charges to any of the parcels by the court would necessarily have been based on speculation. Hence, we find no error in the court's failure to charge the parcel with partnership contributions.

The survivor also seeks to augment his judgment in the amount of $3,350 to pay for the final accounting, an amount denied by the court on the ground that waiting until the first day of trial for presentation of its results was too long a delay. Since the partnership paid for two prior accountings and since the accountant at trial was employed by the surviving partner expressly for the action, it would be inequitable to again charge the partnership for an accounting which it demanded and to which it was entitled 3 years prior to trial. *See Fiorito v. Goerig,* 27 Wn.2d 615, 179 P.2d 316 (1947).

We also affirm the court's refusal to award wages to the survivor during the "winding up" period following decedent's death. Eugene Kruse died in May 1973. The court found that 1 month later his widow, as administratrix of the estate, demanded that the survivor provide an accounting and proceed to wind up partnership affairs, including the disposition of the partnership property.

While the statute[3] provides that a surviving partner be compensated for winding up a partnership dissolved by the

---

[3]RCW 25.04.180(6) provides:

> No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his services in winding up the partnership affairs.

This statute is in derogation of the common law. *See* J. Crane & A. Bromberg, *Partnership* § 83(c) (1968). However, we note that the rule that statutes in derogation of the common law are to be strictly construed is not to apply to this chapter. RCW 25.04.040(1). Nonetheless, we do not constrain the concept of "winding up" so as to include the actions of the surviving partner here.

Cases construing and applying the foregoing provision of the uniform partnership act are collected in Annot., *Construction and Application of § 18(f) of Uniform Partnership Act as to Surviving Partner's Right to Compensation for Services in Winding up Partnership,* 81 A.L.R.2d 445 (1962). The author says at pages 445–46:

> [T]here appear to be fewer than a dozen reported cases in which a surviving partner's right to compensation thereunder for services in winding up a partnership has been in issue. This is not surprising, because unless the partner-

death of another partner, clearly the survivor here would not qualify to receive such wages because he did not, in fact, wind up the partnership affairs. Instead, he continued to operate the farm without the permission of the estate or court until he was served with an ejectment action in April 1974, nearly 1 year after the death of his brother. Although asked for an accounting immediately after the death, he did not deliver a preliminary accounting until December 1973, and the final accounting was not presented until the day of trial. Several witnesses criticized the surviving partner's farming practices during the "winding up", and he admitted he was short of knowledge, equipment and financing necessary to carry on the business. He made no attempts to lease or sell the property, alternatives of which he was aware.

However, there was no finding that the surviving partner breached his fiduciary duty to the partnership during the "winding up", nor did the court speculate on his farming prowess or on whether his efforts during the "winding up" avoided partnership liability to neighboring farmers for nuisance caused by dust blowing from partnership property. Although there was sufficient evidence of a breach of fiduciary duty by the survivor, the court *assumed* a good faith effort on his part in preserving the principal partnership asset—the real estate. There is no dispute the land has appreciated in value. Yet, the continued farming of the survivor after decedent's death resulted in an operating loss of about $17,000.[4]

---

ship agreement contains a provision which renders § 18(f) of the act inoperative, the clarity of that section of the act seems to leave no ground for a legitimate challenge to a surviving partner's right to compensation for services in winding up a partnership, and the only legitimate questions are what compensation is reasonable under the circumstances, and has the surviving partner waived or forfeited his right thereto.

[4]Income to the partnership from the date of decedent's death until August 13, 1974, was based upon the value of partnership farm products and grazing land used by the survivor. Expenses consisted of labor, fuel, water, seed, fertilizer, loss of repossessed farm machinery and interest.

■ The estate appeals from the court's decision charging that operating loss to the partnership, contending that it should be borne solely by the surviving partner. We agree. The general rule regarding the powers of a surviving partner in winding up the partnership is that they are commensurate with the duties imposed upon him in performing the business necessary to a settlement of the partnership affairs, but they are practically limited to those required to enable him to close up the firm business.[5] It is evident that the loss was not incurred in closing up the partnership, and the court specifically refused to find that the operations of the surviving partner following the death of the decedent were *necessary* to preserve the assets. Under those circumstances the loss should, indeed, be borne by the surviving partner because by engaging in new farming operations he exceeded his authority to act for the partnership.[6]

We also agree with the contention of the estate that the partnership should not be charged with interest on funds borrowed by the survivor to continue the business following decedent's death. As noted previously, his actions were not in accord with his duties to wind up the affairs of the partnership as quickly as possible. However, there is an indication that a portion of the funds borrowed may have been

---

[5]60 Am. Jur. 2d *Partnership* § 232 (1972); 68 C.J.S. *Partnership* § 289 (1950).

[6]RCW 25.04.340 limits the contribution of copartners following dissolution. It provides:

> Where the dissolution is caused by the act, death or bankruptcy of a partner, each partner is liable to his copartners for his share of any liability created by any partner acting for the partnership as if the partnership had not been dissolved unless:
>
> . . .
>
> (2) The dissolution being by the death or bankruptcy of a partner, the partner acting for the partnership had knowledge or notice of the death or bankruptcy.

In that regard see also RCW 25.04.350(1) which allows a partner to bind the partnership, after dissolution, "(a) By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution;"

Cases concerning the conduct of partners winding up the affairs of dissolved partnerships are collected in Annot., 60 A.L.R.2d 826 (1968).

applied to partnership debts that arose prior to the death of Eugene Kruse. To that extent, the interest is chargeable to the partnership rather than to the individual partner, and we remand to the trial court for resolution of that question.

■ We disagree with the estate on the matter of attorney's fees. It contends it should be awarded its fees on the grounds the instant action preserved a common fund, *Fiorito v. Goerig,* 27 Wn.2d 615, 179 P.2d 316 (1947), or that equity demands such a result because of the conduct of the surviving partner, *Hsu Ying Li v. Tang,* 87 Wn.2d 796, 557 P.2d 342 (1976). In order for a litigating party to recover attorney's fees under the common fund theory, someone *other* than the immediate litigants must be benefitted by the action. Here, no third parties were involved. Nonetheless, the estate urges that we apply the rationale of *Tang* because of the surviving partner's failure to wind up the partnership affairs. *Tang,* too, is inapplicable. There one partner brought suit against another to compel him to perform his fiduciary duties and preserve the partnership property. The wrongdoing partner there failed to keep the firm's books, failed to present an accounting as requested and commingled the expenses and disbursements of the partnership with his personal expenses and disbursements. The court said at page 801:

> Petitioner necessarily instituted this lawsuit to compel respondent to carry out his fiduciary duties as manager of the partnership. *The lawsuit preserved the partnership assets and prevented respondent from further commingling the partnership with his separate assets.*

(Italics ours.) Here the parties stipulated this action was one for an accounting, and the farmland was sold, with their consent, about 2 years prior to trial. Hence, *Tang* is distinguishable.

■■ Finally, the estate assigns error to the failure of the court to award unexplained cash contributions to the partnership to it; and the surviving partner complains of the court's failure to award him $2,000 allegedly derived

from a partnership shake–cutting business. As to the shake–cutting proceeds, the court specifically refused to adopt the survivor's proposed finding on that matter, and such a refusal constitutes a negative finding. *Manufacturers Acceptance Corp. v. Irving Gelb Wholesale Jewelers, Inc.*, 17 Wn. App. 886, 565 P.2d 1235 (1977). In that regard, the court apparently chose not to believe testimony of the brothers' father about the shake–cutting business. On the matter of the unexplained cash contributions, there is no record the estate proposed such a finding or brought the matter to the attention of the court. Thus, we will not review the alleged error.

The judgment of the Superior Court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied March 28, 1978.

Review denied by Supreme Court September 22, 1978.