## ARMCO STEEL CORPORATION, METAL PRODUCTS DIVISION, v. CHICAGO AND NORTH WESTERN RAILWAY COMPANY AND OTHERS.

149 N. W. (2d) 23.

February 24, 1967—No. 40,290.

*Arthur H. Lindeman, John W. Brown,* and *O. C. Adamson II,* for appellants.

*Frank E. Clinite* and *John C. DeMoss,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendants' motion for summary judgment. The issue was certified as important and doubtful, making it reviewable here.

In 1963 defendant railway company contracted with defendant E. J. G. Company, formerly Steelock Building Company, to construct a building at 740 Westminster Street in St. Paul on a vacant lot belonging to the railway. After the building was constructed it was leased to Crane Service Corporation, which subleased to defendant Britton Motor Service, Inc. The building was designed and built primarily for the purpose of providing a place where truck trailers arriving piggyback on railroad flatcars could be loaded and unloaded by lessees. Material for the building was furnished by plaintiff, Armco Steel Corporation, Metal Products Division. On August 13, 1964, after the building was completed, Armco Steel Corporation filed a mechanics lien statement in the office of the register of deeds of Ramsey County, and on November 25, 1964, commenced an action to foreclose the lien. All of the defendants except the general contractor, who apparently is unable to pay the materialmen for the material furnished in the construction of the building, moved for summary judgment on the ground that the mechanics lien should have been filed with the secretary of state instead of with the register of deeds. The only question here is whether filing with the register of deeds created an enforceable lien. The applicable statutes are:

Minn. St. 514.01. "Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery for any of the purposes hereinafter stated, whether under contract with the owner of such real estate or at the instance of any agent, trustee, contractor or subcontractor of such owner, shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution; that is to say, for the erection, alteration, repair, or removal of any building, fixture, bridge, wharf, fence, or other structure thereon, * * *."

§ 514.04. "If such contribution be thus made for the construction, alteration, or repair of any line of railway, or any structure or appurtenance of such railway, or of any telegraph, telephone, or electric light line, or of any line of pipe, conduit, or subway, or any appliance or fixture pertaining to either, the person performing such labor, or furnishing such skill, material, or machinery, shall have a like lien upon the lines so improved, and upon all the rights, franchises, and privileges of the owner appertaining thereto."

§ 514.08. "The lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, unless within such period a statement of the claim therefor, be filed for record with the register of deeds of the county in which the improved premises are situated, or, *if the claim be made under 514.04*, with the secretary of state. * * *" (Italics supplied.)

It is the contention of defendants that the provision of § 514.08, that if the claim is made under § 514.04 the lien statement is to be filed with the secretary of state, is exclusive and that inasmuch as the building here was an appurtenance of the railway, filing with the register of deeds did not create any lien. The trial court held that the two provisions of § 514.08 are cumulative and that filing with the register of deeds created a valid lien.

The legislative history of our lien statutes may furnish some light on this question. G. S. 1866, c. 90, § 1, provides:

"Whoever performs labor, or furnishes materials or machinery for

erecting, constructing, * * * any house, mill, manufactory or other building * * * shall have a lien * * *."

Section 7 of this act provides:

"Any person entitled to a lien under section one * * * shall file the same in the register's office of the county in which such labor * * * have been furnished * * *."

The provision with respect to liens against railway lines came into being for the first time in 1874. It must be kept in mind that this was a period when railroads were being constructed quite extensively and, while we merely guess at the purpose of the law, it is reasonable to assume that the legislature felt that if a lien were to attach to a railway line running in more than one county, and to its rights, privileges, and franchises as well, it would be most practical to have the lien filed in one place rather than with the register of deeds of every county through which the line ran. In any event, L. 1874, c. 69, added this provision to § 1 of the lien law:

"Whoever furnishes any labor, skill or material for constructing, altering or repairing any line of railway, or for constructing, altering or repairing any bridge, telegraph, depot, fences or other structure appertaining to any line of railway * * * shall have a lien * * * upon all such line of railway, and upon all franchises, privileges and immunities, and upon all bridges, depots, telegraphs, fences and other structures, and upon all right of way appertaining to such line of railway."

L. 1874, c. 69, amended § 7 of the lien law so as to provide:

"Any person * * * entitled to a lien under the provisions of section one aforesaid, shall * * * file the same in the office of the register of deeds of the county * * * in case the same shall have been furnished for the construction, alteration or repair of any line of railway, or of any bridge, depot, fences or other structure appertaining to such line of railway in the office of the secretary of state; * * *."

It is quite obvious from reading the original provision for a lien against a railway line that the parts of the line to which the lien would attach were for the most part expressly stated. The only part left more or less

open is the language, "furnished for the construction * * * of * * * other structure appertaining to such line of railway."

Through a number of subsequent amendments the present law has come down to us. Certainly, under the laws of 1866 prior to its amendment in 1874, a lien filed with the register of deeds of the county in which the building involved in this litigation is located would have been sufficient to create a valid lien. The question then is: Would the adoption of the subsequent statute expressly permitting a lien against the railway line, as such, destroy the right to create a lien by filing with the register of deeds? L. 1889, c. 200, repealed the above provisions and replaced them with a statute having somewhat similar language, the material parts of which read:

"Section 1. Whoever performs labor, or furnishes skill, material or machinery for the construction * * * or * * * erection * * * of any house, mill, manufactory, or other building * * * shall have a lien * * *.

"Sec. 2. Whoever performs labor, or furnishes skill, material or machinery for grading, filling in or excavating * * * shall have a lien * * *.

"Sec. 3. Whoever performs labor, or furnishes skill, material or machinery for the construction, alteration or repair of any line of railway * * * shall have a lien * * *."

Section 8 of this chapter, like the former law, provided that a lien under § 3 would be established by filing the statement with the secretary of state. In the compilation of the laws in G. S. 1894, §§ 6229, 6230, 6231, and 6236, are the same as §§ 1, 2, 3, and 8 above. In the 1905 revision, the lien law contains substantially the same language as our present statute and it has so continued ever since.

■ Mechanics lien laws are remedial in nature, and we have consistently held over the years that they should be liberally construed so as to protect the rights of workmen and materialmen who furnish labor and material in the improvement of real estate. O. B. Thompson Elec. Co. v. Milliman & Larson, Inc. 268 Minn. 299, 128 N. W. (2d) 751.[1] In Emery v. Hertig, 60 Minn. 54, 57, 61 N. W. 830, 831, we said:

---

[1] The cases are collected in 12 Dunnell, Dig. (3 ed.) § 6033.

"* * * It is sufficient for us to say that, whatever may be the conflicting decisions of other tribunals, we are of the opinion that no narrow or limited construction of our mechanic's lien law should be indulged in by the courts, and that the labor and industry of the country should not be hampered by technicalities or harsh interpretations of what was evidently intended to be a just law for the benefit of our industrial pursuits, which tends so materially to the building of cities and towns, and is the embodiment of so much natural justice. He whose property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured. To accomplish this result is the intent of the lien law."

■ Mechanics lien laws did not exist under the common law but are created by statute, Emery v. Hertig, *supra,* and there must be a substantial compliance with the statute if liens are to be perfected; if a construction is permissible that will sustain the lien, it is to be preferred to one that will invalidate it. In Nelson v. Sampson, 186 Minn. 271, 273, 243 N. W. 105, 106, we said:

"* * * The mechanic's lien law is to be liberally construed, and its purposes are not to be defeated by mere technicalities in preliminary proceedings."

While there is serious doubt that the building here involved is appurtenant to the railway at all, we need not determine that question. It is located about 1½ city blocks from the line of the railway. It is not used by the railway directly but is leased to others for a use that may be of advantage to the railway company.

■ The language of § 514.08—"if the claim be made under section 514.04"—indicates a choice afforded the lienor to file under either section. Thus, if the lienor wishes to reach property located in one county into which his labor or material has gone, he may file under § 514.01, in which event the lien statement is filed in the office of the register of deeds. If, on the other hand, he wishes to reach the railway line as such, including its rights, franchises, and privileges, he should file under § 514.04, in which event the statement is filed with the secretary of state. Here he has proceeded under § 514.01 and seeks to reach only the

building into which plaintiff's material has gone. Therefore, filing with the register of deeds was sufficient to protect the lien.

There is no clear indication that the legislature, when it adopted our original lien law pertaining to railways as such, intended to repeal the former law which apparently covered all buildings. It would seem reasonable to assume that the legislature intended to extend the remedy of laborers and materialmen rather than to limit it, and we so hold. We think the trial court was right in holding that the remedies in this situation are cumulative.

Affirmed.