RYAN CONTRACTING,
INC., Respondent,

v.

JAG INVESTMENTS, INC., et al.,
Petitioners, Appellants,

Metro Home Insulation, Inc.,
et al., Defendants,

GMH Asphalt Corporation, Respondent.

No. C5–99–1688.

Supreme Court of Minnesota.

Oct. 11, 2001.

Kay Nord Hunt, James M. Lockhart, Lommen, Nelson, Cole & Stageberg, PA, Minneapolis, for appellants.

Jeffrey C. Paulson, David D. Hammargren, Hammargren, Meyer & Paulson, PA, Minneapolis, for respondent.

Patrick J. Neaton, Neaton & Puklich, PLLP, Wayzata, for respondent.

## OPINION

LANCASTER, Justice.

Appellant JAG Investments, Inc. appeals from the court of appeals' decision affirming the district court's denial of JAG's motion for summary judgment. JAG asks us to reverse the court of appeals' holding that respondent Ryan Contracting, Inc. effectively served JAG in a mechanics' lien action even though Ryan failed to serve JAG within the one-year time limit imposed by Minn.Stat. § 514.12, subd. 3 (2000). JAG also contends that the court of appeals erred when it failed to dismiss respondent GMH Asphalt Corporation's cross-claim against JAG because Ryan never effectively served JAG and because GMH's cross-claim does not stand on independent jurisdictional grounds. In short, JAG asks this court to reverse the court of appeals' decision and dismiss respondents' mechanics' lien actions for lack of personal jurisdiction. We agree that the district court lacked personal jurisdiction over JAG and reverse.

In April 1997, Jagodzinski Development Corporation (JDC) hired Ryan to perform clearing, grading, sewer and water main installation, and street construction for the Fairway Hills residential development project in Chaska, Minnesota. JDC is a Minnesota corporation whose president and sole shareholder is Joe Jagodzinski. JAG is a Minnesota investment company that owned much of the Fairway Hills property that JDC planned to develop.[1] Jim Jagodzinski is JAG's sole shareholder and Joe Jagodzinski's father. Ryan subcontracted with GMH to perform street and paving work.

On April 8, 1998, Ryan served and filed a mechanics' lien against the Fairway Hills property to recover amounts allegedly due from JDC. The lien listed Ryan's last day of work as December 16, 1997. Ryan, however, claims that it performed additional work after the lien was filed and that its actual last day of work was September 13, 1998.

On December 4, 1998, Ryan filed a lawsuit to foreclose on its lien.[2] Ryan personally served JDC on the same day by serving the summons and complaint on Joe Jagodzinski. Ryan did not personally serve JAG at this point.[3] Nonetheless,

---

1. JAG was not the only party that owned portions of the Fairway Hills property. Other landowner-defendants were named in Ryan's complaint. However, JAG appears to be the only remaining property owner that Ryan and GMH seek to include in their mechanics' lien actions, and JAG is the only landowner-defendant that appealed from the court of appeals' decision.

2. Ryan's complaint also asserted a claim against JDC for breach of contract, and a claim against JDC and JAG for unjust enrichment. This opinion addresses only Ryan's and GMH's lien claims against JAG.

3. In its brief to this court, Ryan states that it served a copy of the summons and complaint on JAG's attorney in December 1998. Ryan does not specify on which date in December it served this alleged copy. Furthermore, Ryan

JAG served Ryan with an answer on December 23, 1998, and raised the affirmative defense of lack of personal jurisdiction, asserting that Ryan failed to serve JAG within the one-year time limit imposed by section 514.12, subd. 3, of the mechanics' lien statutes. According to JAG, the one-year limit expired on December 16, 1998, because Ryan stated in its lien statement that it last performed work on December 16, 1997. On December 28, 1998, GMH, also named as a defendant in Ryan's complaint, filed its answer and asserted a cross-claim against JAG in an attempt to foreclose its own mechanics' lien.[4] GMH mailed a copy of its answer to JAG's attorney on December 28, 1998.

On July 15, 1999, JAG, JDC, and other defendants filed a motion for summary judgment. In the memorandum of law supporting that motion, JAG argued for the dismissal of Ryan's complaint and release of JAG's property from Ryan's and GMH's mechanics' liens based on lack of personal jurisdiction. JAG also argued for summary judgment based on the merits of the claim. In August 1999, Ryan personally served JAG.

We note that both Ryan and JAG seem to agree that JAG, not JDC, was the owner of the Fairway Hills property. Ryan alleged as much in its complaint and JAG admitted so in its answer. However, in Ryan's mechanics' lien statement, it alleged that JAG, JDC, and Joe Jagodzinski were the "present owners of the [p]remises," and in two other documents submitted to the court attached to Joe Jagodzinski's affidavit, JDC was designated as the owner of the premises. For purposes of this appeal, however, we will assume that JAG is the owner of the property; as owner, JAG is an essential defendant to Ryan's

lien action because mechanics' liens attach to property interests. *Dunham Assocs. v. Group Invs., Inc.*, 301 Minn. 108, 118, 223 N.W.2d 376, 383 (1974). Whether JDC may have a property interest in Fairway Hills is a question properly left to the district court in Ryan's and GMH's claims against JDC; it was not raised to this court and JDC is not a party to this appeal.

On September 21, 1999, the district court held that it had personal jurisdiction over JAG even though it concluded that it is "undisputed that [Ryan] never served [JAG] * * * individually with the Summons and Complaint during" the one-year time limit of section 514.12, subd. 3. The court noted that December 16, 1997, was Ryan's last day of work and therefore Ryan had until December 16, 1998, to serve JAG. Ryan served JDC by the deadline, but did not individually serve JAG until August 1999.

In deciding that Ryan effectively served JAG and that JAG was "properly 'made a party' " to Ryan's lien action, the district court relied on an alternative theory of service:

> [B]oth [Ryan] and GMH Asphalt argue that the lien foreclosures are still valid. [JAG] has appeared and participated in every aspect of this case. In addition, Defendant JDC and [JAG] are undertaking the development of the subject property as a "joint venture" and * * * the attorney representing all of the JAG, [et al.] Defendants was served and did file answers and responsive papers on behalf of his clients. Furthermore, the action itself, which names [JAG as a party], was commenced within the required time period. For these reasons,

points to nothing in the record, and we have found nothing, to support this statement.

4. GMH filed its mechanics' lien on October 5, 1998. The lien listed GMH's last day of work as June 6, 1998.

[Ryan] and GMH argue that property owners have been made party to the action.

The Court agrees and finds that, based on all the reasons just discussed, [JAG is a] legitimate part[y] to this action. * * * Thus, [JAG is] subject to judgment on the foreclosure of the mechanic's liens and the motion for summary judgment on this point is denied.

In a published opinion, the court of appeals agreed with the district court's analysis. It held that "[s]ervice of process on JAG was effective because JAG's joint-venture partner was properly served, JAG received actual notice, and JAG was not prejudiced." *Ryan Contracting, Inc. v. JAG Invs., Inc.*, 609 N.W.2d 642, 647 (Minn. App.2000). The court of appeals held that, because the district court had personal jurisdiction over JAG in Ryan's lien action, the district court also had personal jurisdiction over JAG in GMH's lien action.[5] *Id.* at 646 n. 3. JAG appealed.

 Generally, an order denying a motion for summary judgment is not appealable. *McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 832 (Minn.1995). However, there are exceptions to that general rule; for instance, a denial of a motion for summary judgment based on lack of personal jurisdiction is immediately appealable. *Id.* On appeal from a denial of summary judgment, we determine whether any genuine issues of material fact remain and whether the district court erred in applying the law. *See Zank v. Larson,* 552 N.W.2d 719, 721 (Minn.1996). Specifically, this case requires us to consider whether service of process was effectuated and therefore whether the district court had personal

jurisdiction over JAG. Whether personal jurisdiction exists is a question of law, which we review de novo. *Patterson v. Wu Family Corp.,* 608 N.W.2d 863, 866 (Minn.2000). In this case, whether personal jurisdiction exists will depend in part on a construction of the mechanics' lien statutes. Statutory construction is also a question of law which we review de novo. *State v. Ambaye,* 616 N.W.2d 256, 258 (Minn.2000).

The mechanics' lien statutes set forth the requirements for commencing a lien action, including a time limit within which the action must be commenced. The lien statutes govern the procedural requirements for initiating and maintaining a mechanics' lien action insofar as they are inconsistent with or in conflict with the Minnesota Rules of Civil Procedure. Minn. R. Civ. P. 81.01(a) & App. A. Under the lien statutes, an action may be commenced

> by any lienholder who has filed a lien statement for record and served a copy thereof on the owner pursuant to section 514.08, and all other such lienholders shall be made defendants therein. The summons shall state that the complaint has been filed with the court administrator and shall be of no effect unless such complaint be in fact so filed.

Minn.Stat. § 514.11. The mechanics' lien statutes also provide a one-year time limit on the commencement of the action:

> No lien shall be enforced in any case unless the holder thereof shall assert the same, either by filing a complaint or answer with the court administrator, *within one year after the date of the last item of the claim as set forth in the recorded lien statement;* and, *no person*

---

5. Once a lien action is filed, all other possible lienholder-claimants with claims arising from the same improvements cannot initiate their own action but must intervene in the original action by answer. Minn.Stat. § 514.12, subd. 2 (2000). Such answer must be filed with the court administrator, but it need not be served. Minn.Stat. § 514.11 (2000).

*shall be bound by any judgment in such action unless made a party thereto within the year \* \* \*.*

Minn.Stat. § 514.12, subd. 3 (emphasis added). This one-year time limit is at the center of this dispute.

## I. Joint–Venture Service

■ Ryan and GMH urge us to adopt the lower courts' conclusions that Ryan properly served JAG through its "joint venture partner," JDC. Ryan argues that its service on JDC within the one-year time limit should be effective as to JAG because JDC and JAG are engaged in a joint venture. We have not decided whether service on one joint-venture member satisfies service as to another joint-venture member, and no rule expressly permits such service.

Both lower courts assumed, without analysis, that a joint venture exists between JAG and JDC. JAG protests the lower courts' decisions because they are based on joint-venture theory of service that Ryan never argued to the district court. GMH did make reference to a joint venture between JDC and JAG, but did not offer it as a theory of service. Rather, GMH argued that, because a joint venture existed between JDC and JAG, JDC had a property interest in the Fairway Hills property and therefore GMH's lien should attach against JDC. JAG does not concede that a joint venture exists. Although the question of whether a joint venture exists is an unresolved factual issue, for the following reasons it is not a factual question material to the resolution of this case. *See, e.g., O'Malley v. Ulland Bros.,* 549 N.W.2d 889, 892 (Minn.1996) ("A fact is material if its resolution will affect the outcome of a case.").

■ Neither the mechanics' lien statutes nor the Minnesota Rules of Civil Procedure expressly permit joint-venture-based service. In the absence of a statute expressly permitting such service in the context of mechanics' liens, this court will not presume that one exists. *See State v. Moseng,* 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959) ("Where failure of expression rather than ambiguity of expression concerning the elements of the statutory standard is the vice of the enactment, courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature."). Ryan's arguments also do not persuade us to construe the Rules of Civil Procedure to allow service on a party through service on its joint-venture partner. Moreover, "[w]e have not treated service of process as a mere technicality, as it serves the important function of actual, formal notice to the defendant of the action." *Patterson,* 608 N.W.2d at 867. Recognizing the important function that service of process fulfills, and recognizing the due process implications involved, we have always required parties to adhere strictly to the service requirements. *See, e.g., Tullis v. Federated Mut. Ins. Co.,* 570 N.W.2d 309, 311 (Minn.1997) ("Service of process in a manner not authorized by the rule is ineffective service."); *Berryhill v. Sepp,* 106 Minn. 458, 459, 119 N.W. 404, 404 (1909) ("[S]ervice must accord strictly with statutory requirements."). Accordingly, we decline to adopt a joint-venture service rule and therefore need not consider whether Ryan satisfied such a rule.

■ The court of appeals also supported its decision by stating that JAG was not prejudiced by Ryan's improper service because JAG had actual notice of the suit. We have recognized, however, that "actual notice of the lawsuit will not subject defendants to personal jurisdiction without substantial compliance with" the rules of service. *Tullis,* 570 N.W.2d at 311. Ryan made no effort to comply with service re-

quirements because it did not attempt to serve JAG within the one-year time limit imposed by Minn.Stat. § 514.12, subd. 3. Accordingly, we conclude that JAG's actual notice of the lien action, without more, is insufficient to subject JAG to personal jurisdiction.

## II. Ryan's Alternative Arguments

Ryan argues that even if we do not accept the court of appeals' joint-venture theory of service, we can nonetheless uphold that court's decision. Ryan contends that, contrary to the court of appeals' and district court's conclusions, it did serve JAG within the one-year time limit imposed by the lien statutes and therefore made JAG a party to its lien action. Alternatively, Ryan asserts that JAG waived its jurisdictional defense through its participation in this case. Both lower courts stated, without analysis, that Ryan did not serve JAG individually within the one-year time limit imposed by section 514.12, subd. 3. Because the lower courts decided that Ryan effectively served JAG, they did not address the waiver argument.

### a. *One–Year Time Limit*

██ Ryan first argues that it satisfied the one-year time limit and properly commenced its action because it filed its summons and complaint within one year of December 16, 1997, its last day of work as listed on its lien statement. In making this argument, Ryan asserts that the fundamental requirement of section 514.12 is not the serving of the complaint, but the filing of the complaint. Ryan acknowledges that provisions that create a me-

chanics' lien are strictly construed. It argues, however, that the one-year service limit of section 514.12, subd. 3, is an enforcement provision to be liberally construed. We disagree.

██ The requirements for the attachment and creation of a mechanics' lien are to be strictly construed. *Dolder v. Griffin,* 323 N.W.2d 773, 780 (Minn.1982). After a lien is created, however, we liberally construe the lien statutes as remedial acts. *Id.* The one-year limitation of the lien statutes is no ordinary statute of limitations; it puts a limit to the life and duration of the lien. *Bauman v. Metzger,* 145 Minn. 133, 138, 176 N.W. 497, 499 (1920). The statutes require that not only filing a complaint, but also making the defendant-landowner a party to the suit— accomplished by serving the defendant-landowner with the summons—must be done within one year. Minn.Stat. § 514.12, subd. 3; *see Smith v. Hurd,* 50 Minn. 503, 507, 52 N.W. 922, 922 (1892) (holding, in the context of a mechanics' lien action, that as to each defendant a lien action "is commenced and is pending *only from the time of service of the summons on him"* [6] (emphasis added)). If these requirements are not met, the lien and any cause of action flowing therefrom cease to exist at the end of the year. *Bauman,* 145 Minn. at 138, 176 N.W. at 499. Contrary to Ryan's argument, then, we conclude that the one-year time limit on service, like the one-year time limit on filing the complaint, is not merely an enforcement provision of the statute but rather is a require-

**6.** The court in *Smith* goes on to explain that an action is commenced and is pending only from the time of service *or* from the time of the defendant's appearance without service. 50 Minn. at 507, 52 N.W. at 922. In this case, however, the district court did not acquire personal jurisdiction over JAG when it

served its answer—an action that can constitute an "appearance" under Minn. R. Civ. P. 5.01—because, in its answer, JAG raised the affirmative defense of lack of personal jurisdiction and thus did not waive that defense. *See* Minn. R. Civ. P. 12.08(a); *Patterson,* 608 N.W.2d at 866.

ment for the creation of a lien action and must be strictly construed.

Here, although Ryan filed its complaint within one year from its last day of work, it did not serve JAG within that one year. Therefore, Ryan's lien action against JAG ceased to exist one year from Ryan's last day of work. *See, e.g., Thompson Yards, Inc. v. Standard Home Bldg. Co.,* 161 Minn. 143, 146–47, 201 N.W. 300, 302 (1924) ("[O]ne is not a party to an action until he is in a position to be bound by the judgment therein. That does not come about until the court acquires jurisdiction of his person by the service on him of the summons or by his voluntary appearance."); *Smith,* 50 Minn. at 507, 52 N.W. at 922 ("[W]hen [a lien] action is commenced as to any defendant there must be an existing cause of action against him, and the right to a remedy upon it."); *Steinmetz v. St. Paul Trust Co.,* 50 Minn. 445, 447, 52 N.W. 915, 915 (1892) ("Of course, no judgment to enforce a lien against the land could be rendered unless the owner is made a party by being brought into the action."); *see also Guillaume & Assocs., Inc. v. Don–John Co.,* 336 N.W.2d 262, 264 (Minn.1983) ("We have strictly interpreted the time limitations [of the lien statutes] insofar as they determine when a lien is established and when it terminates.").

▆▆ Ryan's second argument is that it satisfied the service requirements of section 514.12, subd. 3, because it served JAG within one year from its last day of work. Ryan claims that even though its lien statement and complaint list December 16, 1997, as its last day of work, its actual last day of work at the Fairway Hills property was September 13, 1998. By serving JAG on August 2, 1999, Ryan argues that it achieved service within the one-year limit.

▆▆ Applying the strict construction standard that we have determined is ap-

propriate for the one-year time limit of section 514.12, we conclude that Ryan's argument is defeated by the plain language of that section. The statute requires that the complaint be filed, and that service be made, "within one year after the date of the last item of the claim *as set forth in the recorded lien statement."* Minn.Stat. § 514.12, subd. 3 (emphasis added). The statute expressly creates a one-year time limit that begins to run on the last day of work a lienholder records in the lien statement. This conclusion is supported not only by the plain language of section 514.12, subd. 3, but also by strong policy considerations: "It has been the policy of our statutes creating mechanic's liens to fix a definite time when such liens should terminate, to the end that those interested in the property, or dealing with it, might know with certainty when it was free from such claims * * *." *Bauman,* 145 Minn. at 140, 176 N.W. at 500. For these reasons, we hold that the one-year time limit set forth in Minn.Stat. § 514.12, subd. 3, begins to run on the last day of work as listed in the recorded lien statement. Accordingly, Ryan had until December 16, 1998, to serve JAG and thus its August 1999 service was untimely.

### b. *Waiver*

▆▆ Ryan argues that even if we determine that it did not satisfy the one-year service requirement, we can still uphold the court of appeals' decision because JAG effectively waived its jurisdictional defense through its participation in the case. In JAG's answers to Ryan and GMH, JAG affirmatively raised a defense based on lack of personal jurisdiction. However, Ryan accurately points out that a party can waive a jurisdictional defense. *See Miss. Valley Dev. Corp. v. Colonial Enters., Inc.,* 300 Minn. 66, 73, 217 N.W.2d 760, 764 (1974). Ryan directs our atten-

tion to the following actions by JAG as support for its waiver argument: (1) JAG waited seven months after answering before it moved for summary judgment based on lack of personal jurisdiction; (2) JAG served discovery on parties in the interim; (3) JAG attended depositions and noticed depositions on the merits of the claims; (4) JAG attended court-ordered mediation; and (5) JAG filed a motion[7] in June 1999 to compel discovery responses and request reimbursement of costs and fees.

We recently revisited the issue of when waiver may result even after a party raises a personal jurisdiction defense. *Patterson,* 608 N.W.2d at 864. In *Patterson,* we explained that "simple participation in [a lawsuit] does not, standing alone, amount to waiver of a jurisdictional defense. Rather, it is the failure to provide the court an opportunity to rule on the defense before affirmatively invoking the court's jurisdiction on the merits of the claim" that leads to waiver. *Id.* at 868. Here, JAG moved for summary judgment on the merits, but also asked for dismissal based on lack of personal jurisdiction. Where a party simultaneously invokes the court's jurisdiction on the merits and asks the court to

rule on a jurisdictional defense, waiver will not result unless other circumstances clearly demonstrate the party's acquiescence to the court's jurisdiction. *Id.* at 869 (stating that failure to move for dismissal based on a personal jurisdiction defense, before or contemporaneously with a motion for summary judgment on the merits, results in waiver of that defense). Such circumstances are not present in this case. Thus, JAG did not waive its jurisdictional defense.

### III. GMH's Cross Claim

Having determined that Ryan did not serve JAG and that the district court had no personal jurisdiction over JAG in Ryan's lien action, we are left with the question of whether GMH's cross-claim against JAG survives. Because the court of appeals concluded that the district court did have personal jurisdiction over JAG in Ryan's lien action, it did not reach this issue.[8]

Under the mechanics' lien statutes, once a lien action is filed other possible lienholder-claimants with claims arising from the same improvements cannot initiate their own action but must intervene in the original action by answer. Minn.Stat. § 514.12, subd. 2.[9] GMH originally was named as a

---

7. JAG argues that it did not file this motion, noting that the memorandum in support of the motion specifically states that JDC, not JAG, brought the motion.

8. JAG claims that the court of appeals implicitly held that GMH's cross-claim was unsupported by independent jurisdictional grounds. The court of appeals held that because the district court had personal jurisdiction over JAG in Ryan's lien action, that jurisdiction extended to GMH's cross-claim against JAG. *Ryan Contracting,* 609 N.W.2d at 646 n. 3. However, the court of appeals also ruled that GMH's cross-claim against a different land-owner-defendant, Darlene M. Chiles, did not survive. *Id.* at 646–47. In the Chiles situation, the court of appeals determined that the district court had no personal jurisdiction

over Chiles in Ryan's lien action and that the court's lack of personal jurisdiction extended to GMH's cross-claim against Chiles. *Id.* at 647. The court of appeals did not explicitly address GMH's argument that its cross-claim is supported by independent jurisdictional grounds.

9. Minnesota Statutes § 514.12, subd. 2, provides:

After such filing, no other action shall be commenced for the enforcement of any lien arising from the improvement described, but all such lienholders shall intervene in the original action by answer, as provided in section 514.11. Any such lienholder not named as a defendant may answer the complaint and be admitted as a party. If more than one action shall be commenced in

defendant in Ryan's complaint and asserted its own lien action against JAG in its answer. GMH's lien listed its last day of work as June 6, 1998. GMH mailed its answer, which included the cross-claim against JAG, to JAG's attorney on December 28, 1998.

JAG argues that the district court never had personal jurisdiction over JAG and that the court's lack of jurisdiction extends to the cross-claim because GMH did not personally serve JAG within one year of its last day of work. JAG further argues that, if the district court never had personal jurisdiction over JAG in Ryan's lien action, then GMH's cross-claim must stand on independent jurisdictional grounds in order to survive JAG's motion to dismiss. GMH does not disagree, but contends that independent jurisdictional grounds do support its cross-claim because it satisfied the service requirements set forth in Minn. R. Civ. P. 5.02 by mailing its answer to JAG's attorney in December 1998. JAG responds that it was not a party at the time GMH mailed its answer and that rule 5.02 is not applicable to non-parties. JAG argues that GMH was thus required to satisfy the personal service requirements as set

forth in Minn. R. Civ. P. 4.03 and, because GMH failed to do so, its lien action against JAG must be dismissed.

Generally, personal service is governed by Minn. R. Civ. P. 4.03.[10] As noted above, however, the mechanics' lien statutes govern the requirements for initiating and maintaining a lien action. *See* Minn. Stat. § 514.11 ("The action may be commenced by any lienholder who has filed a lien statement for record and served a copy thereof on the owner pursuant to section 514.08, and all other such lienholders shall be made defendants therein."). Nonetheless, the rules of civil procedure apply to lien actions unless the mechanics' lien statutes are inconsistent or in conflict with the rules of civil procedure. Minn. R. Civ. P. 81.01(a) & App. A. Here, section 514.11 does not specify how a summons should be served in order to commence a lien action and therefore the Minnesota Rules of Civil Procedure, specifically rule 4.03, apply and govern service in a lien action.[11]

Until served pursuant to rule 4.03, one is not made a "party" to an action. *Thompson Yards*, 161 Minn. at 146–47, 201 N.W. at 302 (holding that one is not a party to

---

good faith, all shall be consolidated and tried as one, under such order of the court as may best protect the rights of all parties concerned.

**10.** Minnesota Rules of Civil Procedure 4.03(c) specifically addresses personal service on a corporation. It provides in pertinent part:

Service of summons within the state shall be as follows:
* * * *
Upon a domestic or foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, and if the agent is one authorized or designated under statute to receive service any statutory provision for the manner of such service shall be complied with.

**11.** Section 514.11 specifies *who* may commence a lien action, but it does not specify how each step of the action must proceed. For instance, while section 514.11 does state the substantive requirements that must be contained in a lien action summons, it does not dictate how that summons should be served. Therefore, the rules of civil procedure govern service of the summons in a lien action.

By requiring service to comply with the rules of civil procedure, we only fill in a gap left by the lien statutes. Where the lien statutes differ from the rules, the lien statutes continue to govern. For instance, the lien statutes govern some of the substantive service requirements and require that only a summons, not a complaint, be served. *See* Minn.Stat. § 514.11.

an action until one is in a position to be bound by the judgment, and one cannot be bound by a judgment until the court acquires jurisdiction over that individual), *see generally* Minn. R. Civ. P. 3–5. If a person is not made a party to a lien action within the one-year time limit of section 514.12, subd. 3, that person is not bound by any judgment resulting from the action; in effect, the lien is terminated as to that person. Minn.Stat. § 514.12, subd. 3; *see Bauman,* 145 Minn. at 140, 176 N.W. at 500.

█ GMH does not argue that it personally served JAG pursuant to rule 4.03, but rather contends that it met the service requirements set forth in Minn. R. Civ. P. 5.02 and thereby made JAG a party to the lien action. Rule 5.02 permits service by mailing an answer to a party's attorney.[12] GMH argues that when JAG filed its answer to Ryan's complaint, notwithstanding the fact that JAG had not been served by Ryan, JAG made an "appearance" under Minn. R. Civ. P. 5.01 [13] and therefore GMH was permitted to serve JAG pursuant to rule 5.02. We agree that, by answering, JAG took the type of action that constitutes making an "appearance" pursuant to rule 5.01. However, rule 5.01 states that "[a] *party* appears when that *party* serves or files any paper in the proceeding," and

rule 5.02 permits service by mail upon a "*party*" or the party's attorney. Minn. R. Civ. P. 5.01, 5.02 (emphasis added). Both rules clearly govern service on one who is already a party. Thus, JAG had to be a party to the action before GMH could avail itself of the more lenient service requirements of rule 5.02. Because Ryan never served JAG, JAG was not a party to the lien action.[14] Under these circumstances, GMH could have made JAG a party only by personally serving its answer on JAG pursuant to Minn. R. Civ. P. 4.03 on or before June 6, 1999. Because GMH failed to do so, GMH's cross-claim was not supported by independent jurisdictional grounds and thus the district court had no personal jurisdiction over JAG in GMH's mechanics' lien foreclosure action.

We recognize that because Ryan initiated this lien action, GMH was bound by Minn.Stat. § 514.12, subd. 2, to intervene by answer in the original proceeding and could not commence its own lien action. However, the survival of a cross-claim in a lien action is not dependent on whether the initial plaintiff, here Ryan, effectively serves all defendants. To assure the survival of its cross-claim despite Ryan's faulty service on JAG, GMH could have personally served its answer on JAG pursuant to Minn. R. Civ. P. 4.03. This requirement is consistent with the practice

---

**12.** Minnesota Rules of Civil Procedure 5.02 provides in part:

Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court. Written admission of service by the party or the party's attorney shall be sufficient proof of service. Service upon the attorney or upon a party shall be made by delivering a copy to the attorney or party; transmitting a copy by facsimile machine to the attorney or party's office; or by mailing a copy to the attorney or party at the attorney's or party's last known address * * *.

**13.** Minnesota Rules of Civil Procedure 5.01 states in pertinent part: "A party appears when that party serves or files any paper in the proceeding."

**14.** If Ryan had served JAG, thereby making it a party to Ryan's lien action, GMH would not have been required to serve JAG with the answer. The lien statutes specifically state that although a defendant-lienholder must file its answer with the court administrator, it need not serve a copy of the answer on any party. Minn.Stat. § 514.11.

already encouraged for lienholders. *E.g.,* Stephen A. Melcher, *Foreclosing Mechanic's Liens And Suing Out Payment Bond Claims, in* Minnesota Institute of Legal Education, *Mechanic's Liens & Payment Bonds* § VII, p. 5 (1999) ("Any lien claimant which asserts its claim by answer ought to consider serving process and filing its own notice of *lis pendens* to avoid problems in the event that plaintiff's service or filing was defective."); John G. Patterson, *Enforcing a Mechanics' Lien, in* Minnesota State Bar Ass'n Continuing Legal Educ., *A Comprehensive Guide to Mechanics' Liens in Minnesota* § VII, p. 9 (1999) ("If the plaintiff has failed to comply with any of the requirements of commencing foreclosure of its lien, such noncompliance could be fatal not only to the plaintiff but to the defendant lien claimants as well. The answering lien claimant must verify that the plaintiff has joined *all* interested parties in the action * * *. If an interested or responsible party was not joined, the answering lien claimant should join that party so complete relief can be awarded to the answering lien claimant.").

Further, as noted above, "[w]e have not treated service of process as a mere technicality," *Patterson,* 608 N.W.2d at 867, and we have always required parties to adhere strictly to the service requirements, *see, e.g., Tullis,* 570 N.W.2d at 311 ("Service of process in a manner not authorized by the rule is ineffective service."); *Berryhill,* 106 Minn. at 459, 119 N.W. at 404 ("[S]ervice must accord strictly with statutory requirements."). Service rules should be clear; parties should not be left to guess what, under different factual scenarios, will be an acceptable method of service. Requiring strict compliance achieves this result.

In summary, we hold that the district court did not have personal jurisdiction over JAG in either Ryan's or GMH's lien action. We therefore reverse the court of appeals' decision and grant JAG's motion for summary judgment.

Reversed.

GILBERT, Justice (concurring in part and dissenting in part).

The questions before this court are (1) whether the district court has personal jurisdiction over JAG in Ryan's lien action and (2) whether the district court has personal jurisdiction over JAG in GMH's cross-claim. With respect to the first issue, I concur with the majority's decision declining to adopt a joint-venture service rule and that actual notice of the mechanics' lien action without service is insufficient to subject a party to personal jurisdiction. However, there are additional theories of personal jurisdiction that were not considered by the courts below. The relevance and strength of these theories are a function of the relationship between JAG, JDC, and the Fairway Hills property. Because there remain numerous genuine issues of material fact regarding this relationship, a reversal under these facts calls for a remand. Accordingly, I respectfully dissent from the majority's decision.

I also respectfully dissent from the majority's decision that the district court lacks personal jurisdiction over JAG in GMH's cross-claim. The majority's conclusion that GMH needed to personally serve JAG improperly imports the rules of civil procedure into our mechanics' lien jurisprudence. Although party status is established through service in ordinary civil actions, the Mechanics' Lien Statute provides elaborate rules for establishing party status in mechanics' lien actions. Because those specialized rules take precedence over conflicting rules of civil proce-

dure, under these facts GMH has properly asserted its cross-claim.

## I. Personal Jurisdiction Over JAG in Ryan's Lien Action

The question before the court is whether the district court has personal jurisdiction over JAG in Ryan's lien action. Ryan's principal theories of jurisdiction are (1) Minn. R. Civ. P. 4.03 and Minn.Stat. §§ 514.10–514.12 (2000) (Mechanics' Lien Statute) permit a joint-venture service rule and (2) actual notice of a lien action without service is sufficient to subject a party to personal jurisdiction under the Mechanics' Lien Statute. Because adopting these theories would require this court either to create new rules of service of process or depart from the plain meaning of statutory language, I concur with the majority's decision to reject these theories of personal jurisdiction. I disagree, however, with the disposition of this case and would remand the case to the district court for further factual findings.

A remand is the proper disposition of this case because there is a material factual dispute regarding the relationship between JAG, JDC, and the Fairway Hills property. The majority insists that this relationship "is not a factual question material to the resolution of this case." If the lower courts had considered and exhausted the universe of personal jurisdiction theories raised by the parties, the legal and factual relationship between JAG, JDC, and the Fairway Hills property indeed would be immaterial. However, this did not happen.

The lower courts considered only the joint-venture theory of personal jurisdiction. Yet Ryan's complaint alleges that JAG and JDC are "related business entities and share common ownership and control." Ryan thus raises two theories that could support a finding that the district court has personal jurisdiction over JAG. First, there could be a principal-agent relationship between the party served, JDC, and JAG such that service upon JDC was sufficient to provide personal jurisdiction over JAG. *Derrick v. Drolson Co.*, 244 Minn. 144, 148–49, 69 N.W.2d 124, 127–28 (1955). Second, JAG and JDC may be engaged in a family partnership so that service upon JDC constituted service upon JAG. Minn.Stat. § 540.152 (2000); *State v. Ritholz*, 257 Minn. 201, 202–03, 100 N.W.2d 722, 724 (1960); *Ford Motor Co. v. Sylte*, 188 Minn. 578, 579–80, 248 N.W. 55, 56 (1933).

The factual record before us indicates that JAG is wholly owned by Jim Jagodzinski. JDC is wholly owned by Joe Jagodzinski, Jim Jagodzinski's son. There is some indication that JAG and JDC operate out of the same business address at Fairway Hills in Chaska. It is unclear who owns the Fairway Hills property. Although JAG insists in its memorandum in support of its motion for summary judgment that it owns the Fairway Hills Development, neither JAG nor JDC submitted any title evidence to the district court. In addition, attached to the sworn affidavit of Joe Jagodzinski submitted in support of JDC's motion for summary judgment are two documents identifying JDC as the owner of the Fairway Hills property [1] as well as an affidavit of Tom Veenker, presi-

---

**1.** Attached to the sworn affidavit of Joe Jagodzinski submitted in support of JDC's motion for summary judgment is a document entitled "Instructions to Bidders" which identifies JDC as the owner of the Fairway Hills property. Similarly, in the actual construction agreement between JDC and Ryan Contracting, dated April 16, 1997, which was attached as Exhibit "B" to Joe Jagodzinski's affidavit, JDC is designated as the owner of the Fairway Hills subdivision.

dent of All Metro Development Consultants, in which Mr. Veenker states that the Fairway Hills Development in Chaska "was developed by Jagodzinski Development Corporation and known [sic] by JAG Investments, Inc." Significantly, the contract documents signed by the parties and submitted to the district court by JDC contain an affirmative representation by JDC that it is the owner of the Fairway Hills property. Furthermore, Joe Jagodzinski testified in his deposition that there was a joint-venture and profit-sharing agreement between JAG and JDC and, in its answer, JAG claimed as an offset alleged damages claimed by JDC.

These facts, particularly the profit sharing agreement between JAG and JDC relating to the Fairway Hills property, suggest that JAG and JDC were either engaged in business as a partnership or JDC was an agent of JAG. At a minimum, they indicate that Ryan's improvements to Fairway Hills through JDC were done with the knowledge and consent of JAG. It is therefore possible that service on JDC was sufficient to preserve Ryan's action against JAG.

Of course, the fact that there are hints in the factual record before us that an agency or partnership theory might support a finding of personal jurisdiction over JAG does not mean that Ryan ultimately will prevail on this issue. The relevance and strength of these theories are a function of the business relationship between JAG, JDC, and the Fairway Hills property. This is why our prior case law emphasizes the importance of determining the connections between the parties and the property in a mechanics' lien foreclosure action. *Smith v. Hurd,* 50 Minn. 503, 506–

07, 52 N.W. 922, 922 (1892). Satisfying the standards for service of process depends on the structure of business relationships. *Id.,* 52 N.W. at 922. The existence of an agency relationship is a question of fact. *Vacura v. Haar's Equipment, Inc.,* 364 N.W.2d 387, 391 (1985). The existence of a partnership is a question of fact. *Cyrus v. Cyrus,* 242 Minn. 180, 183, 64 N.W.2d 538, 541 (1954). We should remand this case for further factual findings regarding the true relationship between JAG, JDC, and the Fairway Hills property.

The majority's summary disposition of this case selectively ignores our notice pleading standard. In dismissing this case, the majority is granting JAG summary judgment relief on one jurisdictional ground—the joint-venture theory—even though the parties never advanced the joint-venture theory of jurisdiction to the district court.[2] Yet the majority ignores the agency and partnership theories of jurisdiction that were placed before the district court by Ryan's complaint. Since the days of code pleading are gone, Ryan properly raised the agency and partnership theories of personal jurisdiction by asserting in its complaint that JAG and JDC are "related business entities and share common ownership and control." We should remand this case so the factual basis for evaluating these theories can be established.

The purpose of the Mechanics' Lien Statute is "to protect the rights of workmen and materialmen who furnish labor and material in the improvement of real estate." *See, e.g., Armco Steel Corp. v. Chicago & N.W. Ry. Co.,* 276 Minn. 133, 137, 149 N.W.2d 23, 26 (1967). Joe Jagodzinski, JDC's owner, represented to Ryan

---

**2.** Ryan, in its memorandum to the district court opposing summary judgment, characterizes the relationship between JAG and JDC as a joint-venture but does not raise a joint-venture theory of personal jurisdiction. JAG and JDC dispute that they were involved in a joint-venture.

and subcontractors, in writing, that it owned the Fairway Hills property. Now, after all the work has been done and the risks have been incurred, Jim Jagodzinski, JAG's owner and Joe Jagodzinski's father, argues that JAG is the true owner. A remand under these facts helps fulfill the longstanding promise of the Mechanics' Lien Statute that "[h]e whose property is enhanced in value by the labor and toil of others should be made to respond in some way by payment and full satisfaction for what he has secured." *Emery v. Hertig*, 60 Minn. 54, 57, 61 N.W. 830, 831 (1895).

## II. Personal Jurisdiction Over JAG in GMH's Cross-claim

I also respectfully dissent from the majority's dismissal of GMH's answer and cross-claim. The majority's holding that GMH could make JAG a party only by personally serving its answer on JAG pursuant to Minn. R. Civ. P. 4.03 is based on a misunderstanding of the relationship between the Mechanics' Lien Statute and the Minnesota Rules of Civil Procedure. The majority explains that because the Mechanics' Lien Statute does not set forth the procedures for service of a summons to commence a lien action, the rules of civil procedure apply. Under rule 3.01, one is not a party to an action until served. Thus, the majority concludes that a lien claimant named as a defendant has the right to maintain an action to foreclose his or her own particular mechanics' lien only by formally serving a cross-claim pursuant to rule 4.03.

It is true that the Mechanics' Lien Statute does not set forth rules for service of process. However, this does not mean that the statute fails to provide rules for making one a party to a mechanics' lien action. Under the rules of civil procedure, service and party status are inextricably linked. One must be served to be a party.

Under the rules for establishing party status detailed in the Mechanics' Lien Statute, however, one can be a party without being served. In arguing that party status is always a function of service of process, the majority improperly imposes a rule applicable in ordinary civil actions on statutory mechanics' lien actions. This directly contradicts the Mechanics' Lien Statute as well as prior decisions of this court.

Our holding in *Sandberg v. Palm*, 53 Minn. 252, 54 N.W. 1109 (1893), involves a situation directly analogous to that of the instant case. In *Sandberg*, the property owner's agent executed a contract to sell the land to Burkey, who engaged several laborers to construct four buildings on the land. Sandberg, one of the laborers, filed an action in Ramsey County to foreclose his mechanics' lien because he had not been paid for his services. In that action, Hammer, another lien claimant who was named by Sandberg as a defendant, filed an answer to foreclose on his (Hammer's) particular mechanics' lien. The district court determined that although Sandberg's action to foreclose was filed within 1 year after the date of the last item of work on Sandberg's lien, Sandberg did not properly serve the summons on the landowner until after the 1–year statutory period had passed. Nevertheless, the district court entered judgment in favor of Hammer even though it dismissed Sandberg's action.

On appeal, we explicitly rejected the property owner's argument that no other lien claimant could appear in an action to assert his or her particular lien when an original plaintiff who did not commence the foreclosure action properly was procedurally barred from asserting his lien. Instead, we held that a plaintiff commences an action to foreclose on a mechanics' lien by filing a complaint and a notice for lis pendens and serving a summons. *Id.* at

255, 54 N.W. at 1109. Once a plaintiff commences an action to foreclose a lien, any other lien claimant who intends to assert their lien may do so by filing an answer. *Id.*, 54 N.W. at 1109. Once the answer is filed, judgment is not dependent on the disposition of the original plaintiff's claim. *Id.*, 54 N.W. at 1109. Under *Sandberg*, GMH properly commenced an action to foreclose its lien against JAG by filing its answer even though Ryan failed to serve a summons on JAG within the statutory period.

Similarly, in *Olson & Serley Sash & Door Co. v. Juckem*, 163 Minn. 375, 204 N.W. 51 (1925), we emphasized that any individual lien claimant may commence an action to foreclose a mechanics' lien but, once an action is commenced, all the other claimants who have been joined as party defendants must file an answer to assert their own particular mechanic's lien. *Id.* at 377, 204 N.W. at 51. After such a lien claimant files an answer, his action to enforce his lien is independent of the original plaintiff's action. *Id.*, 204 N.W. at 52. We held that "the filing of the answer is the essential thing. Filing it is a substitute for the service of the summons [once] an action to foreclose is commenced. It keeps the lien alive whether the plaintiff's action was begun in time or not, and whether the plaintiff prevails or is defeated." *Id.*, 204 N.W. at 52; *Bauman v. Metzger*, 145 Minn. 133, 140, 176 N.W. 497, 500 (1920) (holding that filing an answer commences an action to foreclose a lien). Under *Olson*, GMH commenced its action against both JAG and JDC when it filed its answer, whether Ryan's action was begun in time or not. Service by GMH was irrelevant and unnecessary.

The results in *Sandberg* and *Olson* are consistent with the statutory language and goals of the Mechanics' Lien Statute. Of course, they are inconsistent with the

Minnesota Rules of Civil Procedure precisely because mechanics' lien actions are excepted from the requirements contained in the rules to the extent that they are inconsistent or in conflict with the rules. Minn. R. Civ. P. 81.01(a) & App. A. The Mechanics' Lien Statute specifies the manner in which one is made a party to a mechanics' lien action. A lienholder asserts his or her lien "by filing a complaint or answer with the court administrator, within one year after the date of the last item of the claim as set forth in the recorded lien statement." Minn.Stat. § 514.12, subd. 3. After a plaintiff files the complaint, all other lienholders must be made defendants in the action and the named defendants are only required to file their answer with the district court administrator. The statute mandates that "[n]o copies of such complaint or answer need be served on any party, upon demand, or otherwise." Minn.Stat. § 514.11. In fact, these defendants are prohibited from commencing any action on their own if a notice of lis pendens was filed with the county recorder. Minn.Stat. § 514.12, subd. 2. Under the Mechanics' Lien Statute, service of process is not necessary to make one a party to a lien action. Because this rule is directly at odds with rule 4.03, the procedures specified under the Mechanics' Lien Statute take precedence.

Here, the summons and complaint naming GMH as one of the defendants was filed with the district court on December 4, 1998, and notice of lis pendens was filed with the Carver County Recorder, thus complying with the requirements of the statutory provisions governing the commencement of mechanics' lien actions. The notice in the summons only directed GMH to file its answer, which it did within 20 days of service of the complaint. The notice did not say any further steps were required by GMH. In fact, GMH was prohibited by statute at that time to com-

mence any action on its own if, as was done here, a notice of lis pendens was filed with the county recorder. Accordingly, when GMH filed its answer with the court, it was in compliance with all of the statutory requirements. GMH properly joined the parties and issues.

In sum, in dismissing GMH's cross-claim action against JAG, the majority improperly imports the rules of civil procedure into our mechanics' lien jurisprudence. In doing so, it ignores and overrules our century-old standards regarding the legal effect of an answer filed by a defendant in an already-commenced action to foreclose a mechanics' lien. The practical result of the majority opinion is that foreclosure of a lien will now require a stipulation regarding proper service by the plaintiff or service of all the answers of the multiple defendants on the property owner and all other codefendants. This will create uncertainty, enhance the expense of litigation, and undermine the remedial purpose of the lien statutes. For these reasons, I respectfully dissent from the majority's dismissal of GMH's answer and cross-claim.

PAUL H. ANDERSON, Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice GILBERT.